the consolidation act governed. This would undoubtedly be true under section 1614 of the charter, which says that "all actions, suits, proceedings, * * * under the New York City consolidation act, * * * and pending when this act takes effect, * * * may be prosecuted and defended to final effect in the same manner as they might under the laws then existing, unless herein otherwise specially provided," if there cannot be found in such charter any provision in relation to the method of procedure in proceedings of this character. It is a familiar rule that no suitor has any vested right in any particular method of procedure which existed at the time the procedure or action in which he seeks to enforce his rights is commenced. The case of a change in the rules of evidence between the commencement of a civil action and its trial illustrates this proposition. The rules of evidence which obtain at the time of the trial govern, although evidence, which at the time of the commencement of the action was under the law incompetent, has been made competent, or vice versa. So, in the case at bar, under the new charter, a complete scheme is provided for these proceedings. Certain changes have been made in the method of procedure and the limitations therein, and it has been held by this court that, so far as procedure is concerned, the provisions of the charter apply to pending proceedings. It has been held that the fees of commissioners in proceedings begun under the consolidation act for services rendered after the charter went into effect are governed by the provisions of the charter, and this seems to be a case exactly parallel in principle with the one now presented for consideration.

The limitations of the consolidation act, in reference to extensions of time for commissioners to complete their proceedings, have been superseded by the provisions of section 991 of the charter of the city of New York, which section gives the court power to make such order, in respect to the time and manner of completing the report of the commissioners, as will enable or require the said commissioners to complete the proceedings on their part with reasonable dispatch. And this seems to be the only limitation upon the power of the court in that regard. We think, therefore, that the court was authorized to extend the time beyond that which was fixed by the limitations contained in the consolidation act. We think, however, that the extension granted was too long. The commissioners certainly should be able to make their report within a considerably shorter time.

The order should therefore be modified by requiring the commissioners to report on or before the 1st of March, 1900, and, as modified, affirmed, without costs. All concur; PATTERSON, J., in result.

---

(47 App. Div. 286.)

### MEYER v. BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

STREET RAILROADS—COLLISIONS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

> Plaintiff, slowly driving a loaded truck on a south-bound track, turned at his destination almost directly across the north-bound track, and either the hind wheels of the truck or the projecting part of the load was struck

62 N.Y.S.—3

by a north-bound street car. He testified that when he turned no street car was in sight. His witnesses placed the car from 75 to 200 feet distant when he reached the north-bound track. *Held* error to hold him guilty of contributory negligence as matter of law.

Goodrich, P. J., dissenting.

Appeal from trial term, Kings county.

Action by Louis Meyer against the Brooklyn, Queens County & Suburban Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George F. Elliott (Henry Escher, Jr., on the brief), for appellant.
John L. Wells, for respondent.

PER CURIAM.[1] The plaintiff was driving a truck or business wagon loaded with woodenware along Broadway, in the borough of Brooklyn, on which the defendant maintains and operates a trolley railroad. He was driving southerly along the street in the right-hand or south-bound track, intending to deliver some part of his load at a store No. 585 Broadway, which was on the other side of the street. Just before he reached a point opposite that store, he turned to cross the railroad track, and had proceeded so far across that only either the hind wheels of the vehicle or the projecting part of his load was in the line of the north-bound track, when the loaded vehicle was struck by a north-bound car, and the plaintiff thrown to the street. For the injuries then caused to his person and to his property the plaintiff brought this action.

We are of opinion that the court should not have held as matter of law that the plaintiff was guilty of contributory negligence, but submitted that question to the jury. The chief reliance of the respondent is on the case of Meyer v. Railroad Co., 9 App. Div. 79, 41 N. Y. Supp. 92, decided by this court. In that case the plaintiff was driving a buggy along Fulton street, and, when about 75 feet distant from a cross street, started diagonally on a walk to cross the tracks. At that time a car was approaching from the opposite direction, and then about 150 feet away. We held that the plaintiff was guilty of contributory negligence which precluded a recovery. But this case is markedly different. It is true that the plaintiff did not start to cross the intervening track exactly at right angles, but the variation from a direct crossing was but slight, and was rendered necessary by the character of the vehicle which he was driving and its load. The horse and vehicle occupied a space of some 16 feet, and it would be necessary to straighten them out alongside of the curb when they reached the store or shop where part of the load was to be delivered. For this reason a deviation from an absolutely perpendicular crossing may have been justified. The plaintiff testifies that at the time he started to cross no car was in sight. His witnesses place the distance of the car at the time he reached

---

[1] This opinion was written by Mr. Justice CULLEN before his designation as an associate judge of the court of appeals, and is adopted by this court.

the north-bound track at from 75 to 200 feet. On this appeal the plaintiff is entitled to have the evidence in his behalf considered in the most favorable light in which a jury could have viewed it. Besides this, there remains the undisputed fact that, though the plaintiff was driving at a slow walk, with a loaded vehicle, the horse and the greater part of the vehicle had passed beyond the track at the time of the collision. From this fact we think a jury might well find that when the head of the horse was either on the track, or so near it as to indicate the intention of the plaintiff to cross, the car must have been at such a distance away that, had it been properly managed, the collision would have been avoided.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. I cannot see enough difference between this case and Meyer v. Railroad Co., 9 App. Div. 79, 41 N. Y. Supp. 92, to warrant the conclusion reached by Mr. Justice CULLEN. In the latter case the plaintiff was driving up Fulton street at night. Wishing to cross the downtown track, he looked up, and saw a brightly lighted car coming down on that track, 150 feet away. He gave no sign to the motorman of his intention to cross, but walked his horse across the track diagonally for a distance of two houses, when his carriage was struck by the car. The front of the carriage was struck. In the present case, at a crossing somewhat similar, the plaintiff, who was either in the uptown track or just outside of it, desiring to cross the downtown track, looked, as he says, saw no car, and then attempted to cross that track. The rear wheel of his vehicle was struck. When his horse was on the down track, and the wagon yet on the uptown track, he saw a car approaching. Evidently, that car must have been visible by him when he says he first looked, so that the old doctrine respecting a man looking, and not seeing, or not looking to see, ought to apply. I make this suggestion believing this case to be "perilously near" the other Meyer Case.